UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Xavier Charles Washington, II,

                                Debtor.

_____/

Case No.  8:23-bk-01727-CPM

Chapter 13

## LESSOR SUNSET ELECTRIC'S OBJECTION TO CONFIRMATION OF DEBTOR'S PLAN

Lessor ASB Sunset Electric, LLC ("**Sunset Electric**") objects to confirmation of the proposed Chapter 13 plan of the debtor lessee Xavier Charles Washington, II (the "**Debtor**"), and states:

1.    The Debtor has received (and continues to receive) the benefit of possession of an apartment in Seattle but has not paid the lessor Sunset Electric for that benefit.

2.    As addressed below, the Debtor has <u>not</u> sought to assume or reject Sunset Electric's lease and has only made one postpetition payment on the lease, and the Debtor's plan does not provide for the assumption or rejection of the lease or for payment of the postpetition amounts due. As such, the plan does not comply with the provisions of the Bankruptcy Code, as required by Section[1] 1325(a)(1), and was not proposed in good faith, as required by Section 1325(a)(3). In addition, it does not appear that the Debtor is dedicating all disposable income to the proposed Plan as required by Section 1325(b)(1)(B).

3.    Sunset Electric requests that the Court deny confirmation unless the Debtor (a) properly treats Sunset Electric by (i) either obtaining Court approval for the assumption of the Lease (after paying the cure amount due and providing adequate assurance of future performance) or (ii) rejecting the Lease (and surrendering the Premises and providing *in rem* stay

---

[1] Section references are to Title 11, U.S.C.

1

relief) and (b) in the event of rejection making provision to pay for the postpetition rent due to Sunset Electric as a priority claim.

## **Brief Background**

4.      The Debtor commenced this bankruptcy case by filing a voluntary petition under Chapter 13 of the Bankruptcy Code on April 28, 2023 (the "**Petition Date**").

5.      The docket reflects that this is the third Chapter 13 bankruptcy case commenced by the Debtor in the past three years in this Court. The Debtor filed a petition on January 9, 2020, but has his case dismissed for failure to make plan payments on July 1, 2021. The Debtor filed another petition on January 31, 2022, but again had his case dismissed for failure to make plan payments on February 3, 2023.

6.      Sunset Electric is the lessor of the apartment where the Debtor presently resides at 1111 East Pine St., #6-603, Seattle, Washington, 98122 (the "**Premises**") under an Apartment Lease Contract dated May 21, 2020 (the "**Lease**"). The lease term ended on October 6, 2021, and the tenancy then automatically reverted to a month to month tenancy. A true and correct copy of the Lease (not including addenda) is attached as **Exhibit A**.

7.      The Debtor is in default under the Lease but continues to live at the Premises. The Debtor owes Sunset Electric (a) the sum of $20,626.20 through the Petition Date and (b) the sum of $32,691.66 through October 1, 2023. A true and correct copy of the resident ledger through October 1, 2023 (redacted where indicated) is attached as **Exhibit B**.

8.      The Debtor's operative plan is the Amended Chapter 13 Plan (ECF No. 40) (the "**Plan**"), which was filed on August 7, 2023. The confirmation hearing on the Plan is set for October 18, 2023, at 1:30 p.m. (ECF No. 24). The confirmation hearing was continued from April 28, 2023.

9.      By separate motion, Sunset Electric is (a) seeking to compel the Debtor to assume or reject the Lease by the October 18, 2023 continued confirmation hearing or such additional time soon after that date that is fixed by the Court and (b) seeking the allowance and payment of an administrative expense claim in this case for the unpaid postpetition rent.

## **Objection to Confirmation**

10.      Sunset Electric objects to the Plan because it does not comply with the provisions of the Bankruptcy Code, as required by Section[2] 1325(a)(1), and was not proposed in good faith, as required by Section 1325(a)(3), for the following reasons.

11.      **First**, the Plan does not provide for payment of the past-due postpetition rent to Sunset Electric. As discussed below, the Debtor must either seek to assume the Lease or reject it. Section 1322(a)(2) requires that the Plan provide for the full payment, in deferred cash payments, of all claims entitled to a priority under Section 507 unless the holder of a claim agrees to a different treatment of the claim. Accordingly, Sunset Electric's postpetition rent must either be paid (as part of the cure payment if the Debtor seeks and is able to assume the Lease)[3] or as allowed as an administrative expense pursuant to Section 503(b) entitled to priority under Section 507(a)(2) (if the Debtor rejects the Lease). Sunset Electric should be permitted an administrative expense claim for its postpetition rent because the Debtor uses the Premises for his job in Seattle, which provides an actual, concrete benefit to the estate by permitting the Debtor to work in Seattle and generate income to pay his creditors.

12.      **Second**, the Plan has improperly treated Sunset Electric in the Plan by not providing for the assumption (by curing and providing adequate of future performance of) the Lease or providing for the rejection of the Lease.

---

[2] Section references are to Title 11, U.S.C.
[3] Sunset Electric has not yet decided whether it would oppose assumption of the Lease if soiught by the Debtor.

13.     The Debtor treats Sunset Electric in paragraph 5(i) of the Plan as having a secured claim that is being paid via automatic debit/draft by the Debtor and will continue to be paid to Sunset Electric. Despite this statement, the Debtor has only made one postpetition payment to Sunset Electric (a payment on June 15, 2023 in the amount of $1,100.00, which is less than the half of the monthly rent obligation).

14.     The Debtor acknowledges that he has a lease with Sunset Electric. In Schedule G (ECF No. 1), he lists "Sunset Electric Apartments" as having a "yearly lease for my job in Seattle" with respect to the Premises; and in paragraph 5(i) of the Plan, he similarly lists the property/collateral subject to Sunset Electric's claim as a "month to month lease for my job in Seattle."

15.     The Debtor should have treated Sunset Electric in section 6 of the Plan (Leases / Executory Contracts) and made provision to either:

        a.      attempt to assume the Lease under Section 365(b) by curing the default and providing adequate assurance of future performance under either paragraph 6(a) of the Plan (which requires the Debtor to specify a prompt cure of the arrearage) or under section 6(b) of the Plan (which requires the Debtor to propose to pay direct and terminate the automatic stay terminated *in rem*) or

        b.      reject the Lease under paragraph 6(c) of the Plan, which requires the Debtor to surrender the leased property and terminate the automatic stay *in rem*.

16.     The Debtor has accordingly not sought to assume or reject the Lease as required by Section 365(d)(2) prior to plan confirmation. As noted above, by separate motion, Sunset Electric is seeking to have the Debtor assume or reject the Lease no later than October 18, 2023 or such additional time soon after that date that is fixed by the Court.

17.     **Third**, it does not appear that the Debtor is dedicating all disposable income to the proposed Plan as required by Section 1325(b)(1)(B).

18.     Sunset Electric's undersigned counsel has reached out to the Debtor's counsel on two occasions requesting a call to discuss this case and plan treatment. However, the undersigned counsel has not yet received a response as of the date of this objection.

**WHEREFORE**, for these reasons, Sunset Electric seeks the entry of an Order denying confirmation of the Debtor's Plan and for such other relief as is just and proper.

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of this objection was furnished via transmission of Notices of Electronic Filing on all counsel of record or pro se parties identified on the CM/ECF service list maintained by the Court in this case.

Dated: October 3, 2023

**LESSNE LAW**
*Counsel for Sunset Electric*
100 SE 3rd Avenue, 10th Floor
Fort Lauderdale, FL 33394
Tel: 954-372-5759;
E-mail: michael@lessne.law

By: */s/ Michael D. Lessne*
Michael D. Lessne
Florida Bar No. 73881

**EXHIBIT A**



## SEATTLE - APARTMENT LEASE CONTRACT

Date of Lease Contract: _____ **August 5, 2021** _____
(when the Lease Contract is filled out)

*This is a binding document. Read carefully before signing.*

| Moving In — General Information |
| --- |

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) *(list all people signing the Lease Contract)*:

Xavier Washington

and *us*, the owner: ASB Sunset Electric, LLC.

*(name of apartment community or title holder).* You've agreed to rent Apartment No. _____ **6-603** _____, at **1111 East Pine St. #6-603** _____ _____ _____ *(street address)* in _____ **Seattle** _____ *(city)*, Washington, _____ **98122** _____ *(zip code)* (the "apartment" or "premises") for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than _____ days in any 12 month period or _____ **14** _____ consecutive days without our prior written consent. If the previous space isn't filled in, two days per month is the limit. Receipt of mail at the apartment by any person not listed on this agreement shall be deemed to be proof of occupancy by that person. Any person in the unit, with or without the Resident's knowledge, including but not limited to invitees of guests or other invitees, shall be deemed to be guests for purposes of this agreement.

**3. LEASE TERM.** *(Check one)*

1. ☐ This tenancy is a month to month tenancy commencing on

2. ☒ This tenancy is a lease for _____ months that commences on _____ **October 7th** _____, _____ **2021** _____ and ends at 11:59 p.m. on _____ **October 6th** _____, _____ **2022** _____.

If box 1 is checked above, at least 20 days notice to terminate is required before the end of the monthly rental period.

If box 2 is checked above tenancy shall automatically revert to a month to month tenancy unless you give written notice to terminate at least 20 days prior to the last day of the lease (we must give 60 days written notice).

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the apartment is $ _____ **2215.00** _____, due on or before the date this Lease Contract is signed. **Your security deposit will be held in an escrow company or bank escrow account located in Washington until disposition.** See paragraphs 48 (Security Deposit Deductions and Other Charges), and 49 (Deposit Return, Surrender, and Abandonment) for security deposit return information. Any nonrefundable fees will be described in paragraph 10 (Special Provisions) or on addendums to this lease. If we sell the apartments, we will transfer your security deposit to the new owner who will give you any required statutory notices. In the case of multiple residents, the security deposit shall not be returned until the final Resident on the agreement has vacated and Owner reserves the right to issue any refund check in the name of all Residents or only in the name of the final remaining Resident. It is the Residents' sole responsibility to allocate any refunded amount between themselves.

Your security deposit will be kept in a account at (name and address of financial institution):

Wells Fargo
1201 Pacific Ave. Ste. 175
Tacoma, WA 98402

**5. KEYS.** You will be provided _____ **1** _____ apartment key(s), _____ **1** _____ mailbox key(s), _____ FOB(s), and/or _____ **1** _____ other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ _____ **2215.00** _____ per month for rent, payable in advance and without demand:

☒ at the on-site manager's office, or
☒ at our online payment site, or
☐ at _____ _____ _____ _____

Prorated rent of $ _____ **1786.29** _____ is due for the remainder of the *[check one]:* ☒ 1st month or ☐ 2nd month, on _____ **October 7** _____, _____ **2021** _____.

Otherwise, you must pay your rent, in advance, on or before the 1st day of each month (due date) with no grace period. No matter what day the rent is actually due under this Lease, the rental period shall be from the first day of the month to the last day of the month during the Lease and during any month-to-month tenancy following the end of the Lease. All move in costs, including the first month's rent, deposit, and non-refundable fee, if applicable, shall be paid only by certified check or cashier's check—not by personal check. Any amount paid after the first day of the month shall be paid only by money order, certified check or cashier's check. Cash is unacceptable for any amount due under this Agreement, without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. Rent is not considered accepted if the payment/ACH is rejected, does not clear, or is stopped for any reason. If you don't pay all rent on or before the _____ **4th** _____ day of the month (which date shall not be before the 5th day after the date rent is due), you'll pay a late charge. Your late charge will be *(check one):* ☐ a flat rate of $ _____ **150.00** _____ or ☐ _____ % of your total monthly rent payment. Resident understands and agrees that the rent is due on or before the first day of the month, and any grace period before late charges accrue shall not change the rent due date. If you pay your rent after the late date specified in this paragraph or after the issuance of a 14-day notice, payments must be by certified check, cashier's check or money order. You'll also pay a charge of $ _____ **35.00** _____ for each returned check or rejected electronic payment, plus a late charge. After _____ **2** _____ checks are returned by

your bank for any reason, all future payments due during the remainder of your tenancy, notwithstanding the signing of any new lease agreements, must be by cashier's check, certified check or money order only. If you don't pay rent on time, you'll be delinquent and all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation. If this community has a drop box, it is provided only as a convenience to the Residents. Use of the drop box for payment of rent, or any other amount, and for providing notices to the Owner are at the sole risk of loss or theft of the Resident. If any payment is lost prior to receipt by the Owner, Resident agrees to immediately replace the payment at their sole cost. Resident is strongly encouraged to make all payments directly to the Owner and to obtain a receipt for all payments. All payment obligations under this Lease Contract shall constitute rent under this Lease Contract.

**7. UTILITIES.** We'll pay for the following items, if checked:
☐ water    ☐ gas    ☐ electricity    ☐ master antenna
☐ wastewater    ☐ trash    ☐ cable TV
☐ other _____

You'll pay in full as billed for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected—including disconnection for not paying your bills—until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are sub-metered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance. If recycling is mandated by law, then Residents will be equally charged if the community is assessed any recycling related fines.

**8. INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism, unless otherwise required by law.

In addition, we urge all tenants, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

We ☐ require ☐ do not require you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like. If no box is checked, renter's insurance is not required.

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, may be an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law. If personal liability insurance is required, you are required to provide proof of insurance upon commencement of the tenancy and upon written request.

You acknowledge that no portion of the rent paid by you under this agreement will be applied to the owner's structural fire insurance and that you are in no way a co-insured under any such policy.

**9. LOCKS AND LATCHES.** Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move into your apartment.

You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

---

## Special Provisions and "What If" Clauses

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.

_____
_____
_____
_____
_____

See any additional special provisions.

**11. EARLY MOVE-OUT.** You'll be liable to us for a reletting charge of *[check one]* ☒ $ 1882.75 or ☐ _____ % of the rent (not to exceed 100% of the highest monthly rent during the Lease Contract term) if you:

(1) fail to give written move-out notice as required in paragraph 44 (Move-Out Notice) or any other applicable law; or
(2) move out without paying rent in full for the entire lease term or renewal period; or
(3) move out at our demand because of your default; or
(4) are judicially evicted.

The reletting fee is not a cancellation fee and does not release you from your obligations under this Lease Contract.

**Not a Release.** The reletting charge is not a lease cancellation fee or buyout fee. It is an agreed-to liquidated amount covering only part of our damages, that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain—particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must

pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from continued liability for: future or past-due rent; charges for cleaning, repairing, repainting, or unreturned keys; or other sums due.

**Lease Buy Out.** If you desire to buy out your Lease Contract early please refer to your Lease Buy Out Agreement. If you have not been provided with a Lease Buy Out Agreement you must contact us regarding such an agreement. A lease buy out may not be available in all cases. Other than as required by law or otherwise stated in this Lease Contract the Lease Buy Out Agreement shall govern the means by which you may terminate your tenancy before the end of its term.

**12. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, or negligence, by you or your guests or occupants. In addition, unless the damage or wastewater stoppage is due to our negligence, we're not liable for--and you must pay for--repairs, replacement costs, and damage to the following that result from you or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**13. PROPERTY LEFT IN APARTMENT.**
**Removal After Surrender, Abandonment, or Eviction.** We or law officers may remove and/or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment (see definitions in paragraph 49 - Deposit Return, Surrender, and Abandonment).

**Storage.** Unless required by law, we have no duty to store property removed after judicial eviction, surrender, or abandonment of the apartment. We're not liable for casualty loss, damage, or theft unless otherwise provided by law. You must pay reasonable charges for our packing, removing, storing, and selling any property.

**Redemption.** If we've seized and stored property as authorized by the state statute, you may redeem the property by paying all reasonable moving and storage fees if you make written request for the return of the property before we have sold or disposed of it. We may return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

**Disposition or Sale.** We may throw away or give to a charitable organization all items of personal property that are: (1) left in the apartment after surrender or abandonment; or (2) left outside more than 1 day after a writ of restitution is executed, following a judicial eviction.

Animals removed after surrender, abandonment, or eviction may be kenneled or turned over to local authorities or humane societies. Property described in (1) and (2) above not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 45 days after written notice to you. Our notice may be sent to you first class mail to your last known address or to any other addresses you provided us in writing or any other address known to us for you. Our notice will include (1) our name and the address where we may be contacted, (2) the place where your property is stored, (3) a statement informing you that a sale or disposition of your property will take place in accordance with state law, (4) the date of the sale or disposal (which may be no sooner than 45 days from the date of notice), and (5) a statement informing you of your right (upon payment of storage charges) to have the property returned prior to its sale or disposition. Sale may be public or private, is subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. We'll hold any excess proceeds from the sale for you for one year from the date of sale. If no claim is made to the proceeds in that year, we may retain the proceeds.

However, if your property that we are storing has a cumulative value of $250 or less, we may sell or dispose of your property (except for personal papers, family pictures, and keepsakes) after 7 days from the date that we mailed notice to you of the prospective sale or disposal. We'll send you a 45 day notice before we dispose of any personal papers, family pictures, and keepsakes.

After writ of restitution is issued, if we receive timely notice from you or your representative that you want us to store your personal property, we will do so in accordance with the requirements of RCW 59.18.312.

**14. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, or your failure to pay any subsequent rent or other charges owing under this Lease Contract, all future rent will be automatically accelerated without notice and immediately due. We also may end your right of occupancy and recover damages, future rent, reletting charges, attorney's fees, court costs, and other lawful charges. Our rights and remedies under paragraphs 11 (Early Move-Out) and 33 (Default by Resident) apply to acceleration under this paragraph.

**15. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 19 (Community Policies or Rules/Facilities). If we give you at least 60 days written notice of rent increases or lease changes effective when the Lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 44 (Move-Out Notice).

**16. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The lease will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or lease termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in paragraph 3 (Lease Term)—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the initial term as set forth in paragraph 3 (Lease Term) and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in paragraph 3 (Lease Term) for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**17. AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment unit itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with sixty (60) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

**18. DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it without prior notice to you.

## While You're Living in the Apartment

**19. COMMUNITY POLICIES OR RULES/FACILITIES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. All Lease terms, addenda terms or community policies shall be deemed to be material and substantial obligations for purposes of enforcement. After 30 days written notice, we may make changes to written rules, effective on completion of your lease term, or in a month-to-month tenancy, effective at the end of the next calendar month. You acknowledge and agree that any and all facilities provided by us are provided as a gratuity and their use is not part of the rent that you pay. We reserve the right to change or limit the hours of any such facilities, or to eliminate them completely without prior notice to you or any other residents, and that any such action shall not constitute any claim by you for diminished rental value or a claim of default under the terms of this agreement by us.

**20. LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business in your apartment or in the apartment community is prohibited—

except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

**21. PROHIBITED CONDUCT.**   You, your occupants or guests, or the guests of any occupants, may not engage in the following: criminal activities, behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia (as defined by either Washington State or Federal Law, including marijuana); engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances, or anything that may increase our insurance costs; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

**22. PARKING.**   We may regulate the time, manner, and place of parking of all cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. Parking is not guaranteed. Parking spaces may not be used for storage of vehicles. Your vehicle(s) must be moved every _____ days, including vehicles parked in all guest or handicapped spaces. If you have a reserved parking space, or a garage, you are required to use that space, or your garage, first. We may have unauthorized or illegally parked vehicles towed. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license plate or no current registration and/or inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in a space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or
(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster; or
(13) belongs to a resident and is parked in a visitor or retail parking space.

**23. RELEASE OF RESIDENT.**   Unless you're entitled to terminate your tenancy under paragraphs 10 (Special Provisions), 16 (Delay of Occupancy), 32 (Responsibilities of Owner), 44 (Move-Out Notice), or any other applicable law, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, or bad health.

**24. MILITARY PERSONNEL CLAUSE.**   All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

**25. RESIDENT SAFETY AND PROPERTY LOSS.**   You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other access control devices.

**Statutory Notice Regarding Smoke Detectors and Carbon Monoxide Detectors.**   We'll furnish a smoke detector and carbon monoxide detector in the apartment as required by statute. We'll test the smoke detector and carbon monoxide detector and provide working batteries (if applicable) when you first take possession. After that, you must maintain the smoke detector and carbon monoxide detector and replace any batteries as needed, at your expense. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke-detector and carbon monoxide detector malfunctions to us. Neither you nor others may disable, remove, or damage smoke detectors or carbon monoxide detectors. If the foregoing is violated or you fail to replace a dead battery or report malfunctions to us, you will be liable to us and others for any loss, damage, or fines from fire, smoke, or water. You acknowledge that we have advised you: (i) that the apartment is equipped with a smoke detector and carbon monoxide detector, (ii) that it's your responsibility to maintain the smoke detector and carbon monoxide detector in proper working condition, and (iii) that you may be subject to fines of up to $200 or other penalties for your failure to comply with the provisions of RCW 43.44.110. You confirm that the smoke detector and carbon monoxide detector was operational as of the date of your inspection, and (iv) following the commencement of the lease term, you will pay for and replace the smoke detector and carbon monoxide detector batteries, if any, as needed. You must not permit or cause the removal, disconnection, or disabling of the smoke detector or carbon monoxide detector.

**Casualty Loss.**   Unless caused exclusively by our negligence, we're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism, unless otherwise required by law. During freezing weather, you must ensure that the temperature in the apartment is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your apartment, you'll be liable for damage to our and other's property. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.**   Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity, or other emergency involving imminent harm. You should then contact our representative. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**26. CONDITION OF THE PREMISES AND ALTERATIONS.**   You accept the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons. To the extent allowed by law, we disclaim all implied warranties. You'll be given an Inventory and Condition form on or before move-in which must be completed by you and returned to us. Unless otherwise noted on the form, everything will be considered to be in a clean, safe, and good working condition upon move-in. You understand that items noted on a move in inspection form do not indicate an agreement by us to clean, repair or replace that noted item. All maintenance requests must be in writing and on a separate maintenance request form.

You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

**27. REQUESTS, REPAIRS, AND MALFUNCTIONS.**  IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; broken windows, wet areas on floors, walls or ceilings; electrical problems; malfunctioning lights; broken or missing locks or latches, toilets or faucets; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate your tenancy within a reasonable time by giving you written notice. If your tenancy is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**28. ANIMALS.**  Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the apartment or apartment Community unless we've so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal, we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. You must not feed stray or wild animals. No pets will be allowed to visit the property and no "pet-sitting" shall be allowed. If a pet becomes a problem in our sole opinion, we reserve the right to require that the pet be removed from the property. Once a pet has been removed from the property, the pet deposit for that pet shall not be returned during the tenancy even though the animal

is no longer on the property. If you have pets, assistance or service animals, they must be secured during maintenance work. If they are not secured and pose any type of danger to Maintenance, in our sole opinion, Maintenance shall be entitled to leave the unit prior to the completion of the work and it shall be your sole responsibility to schedule a return by Maintenance for the completion of the work after the animal has been secured.

If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may kennel the animal or contact a humane society or local authority for pick up. When kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

**29. WHEN WE MAY ENTER.**  If you or any guest or occupant is present and gives permission to enter, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. Otherwise, the persons listed in (2) below may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary) if:

(1)  written notice of the entry is hand delivered to someone in the apartment or is left in a conspicuous place in the apartment at least 48 hours before entry (or 24 hours before entry if entry is to show the apartment to prospective residents or purchasers at a specified time). No prior notice is needed in emergencies or situations when prior notice is impractical; and

(2)  entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector or carbon monoxide detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or access control devices; removing or rekeying unauthorized access control devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents. We reserve the right to refuse maintenance work if only a person under age 18 is present at the time of the scheduled work. Refusal to allow us or our agents or vendors to enter the unit after proper notice, if required, shall be a material violation of this agreement.

**30. JOINT AND SEVERAL RESPONSIBILITY.**  Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 49 (Deposit Return, Surrender and Abandonment).

**Replacements**

**31. REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, assignment or granting a right or license to occupy is allowed only when we expressly consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent, in writing, to the replacement, subletting, assignment, or granting a right or any license to occupy, then:

(1) a reletting charge will not be due;
(2) a reasonable administrative (paperwork) fee will be due, and a rekeying fee will be due if rekeying is requested or required; and
(3) the departing and remaining residents will remain liable for all lease obligations for the rest of the original lease term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original lease term unless we agree otherwise in writing—even if a new Lease Contract is signed.

**Responsibilities of Owner and Resident**

**32. RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

(1) keep common areas reasonably clean, subject to paragraph 26 (Condition of the Premises and Alterations);
(2) maintain fixtures, furniture, hot water, heating and A/C equipment;
(3) comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing;
(4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable;
(5) commence steps, within 24 hours after our receipt of written notice from you (except where circumstances are beyond our control), to restore hot or cold water, heat, electricity or to remedy situations imminently hazardous to life;
(6) commence steps, within 72 hours after our receipt of written notice from you (except where circumstances are beyond our control), to remove or remedy a condition that deprives you of the use of a refrigerator, range and oven, or major plumbing fixture supplied by us; and
(7) commence steps, within 10 days after our receipt of written notice from you (except where circumstances are beyond our control), to repair or remedy all other items for which we are responsible that are not described in (5) or (6) above.

We have no duty to repair if the defective condition was caused by you, your guests, or others acting under your control, or if you unreasonably fail to allow us access to the apartment to make such repairs.

You may not repair items yourself and deduct the cost of repairs from your rent unless you have fully complied with the statutory requirements for doing so. Under state statute, you must be current in your payment of rent (including utilities) before exercising any statutory or Lease Contract remedy.

**33. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant, in bad faith, makes an invalid habitability complaint to an official or employee of a utility company or the government; (6) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (7) you or any guest or occupant engages in any of the prohibited conduct described in paragraph 21 (Prohibited Conduct); or (8) any illegal drugs or paraphernalia are found in your apartment or illegal drugs are used in your apartment.

**Lease Renewal When a Breach or Default Has Occurred.** In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, we may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent Lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease.

**Eviction—Nonpayment of Rent.** If you default in rent payment we may end your right of occupancy by giving you 14 days written notice to vacate. The notice will state that you are required to either pay rent in full within 14 days or vacate. Notice may be by: (1) personal delivery to any resident; (2) if a resident is unavailable, personal delivery at the apartment to any occupant of suitable age and discretion in addition to regular mail delivery to a resident; or (3) if no one of suitable age and discretion is home, by leaving a copy of the notice in a conspicuous place in the unit or on the door, delivering a copy to any person in the apartment (if one can be found), and mailing notice to a resident. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations. After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages; or to past or future rent or other sums; or to continue with eviction proceedings.

**Eviction—All Other Violations.** If you default other than by nonpayment of rent, as defined by Washington state law, we may end your right of occupancy by giving you notice as required by law, and this notice will state that you must either remedy your breach or vacate the apartment within the 10 day period. Notice may be given in the same manner as the nonpayment of rent notice described above. However, if you permit waste on the premises, operate an unlawful business, or if conduct by you or your guests constitutes a nuisance, or if you are occupying the unit without color of title or the permission of the owner, we may give you 3 days notice to vacate. If you fail to vacate the apartment after service of a termination notice made at least 20 days or more, or as required by law, before the end of the monthly rental period, we are not required to give you any additional notice. Resident understand that if Resident is given a notice to pay or comply or vacate and chooses to vacate the unit during the period of the notice, that the Resident shall remain liable for the rent through the end of the lease term or the next month in the case of a month-to-month tenancy.

**Acceleration.** All monthly rent for the rest of the lease term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the lease term or renewal period ends; and (2) you've not paid all rent for the entire lease term or renewal period. Such conduct is considered a substantial and material default for which we need not give you notice. Remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) subject to our mitigation duties, you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to hold over.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

**Other Remedies.**   We may report unpaid amounts to credit agencies as allowed by law. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10 (Special Provisions), in addition to other sums due. Upon your default, we have all other legal remedies, including tenancy termination. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party reasonable attorney's fees and all other litigation costs as allowed by law. The Owner shall be deemed to be the prevailing party if the action voluntarily is halted by the Owner prior to judgment, or if the case is not filed, prior to filing, on the basis that the Owner accepted from the Resident all or part of the amounts alleged to be owing, or on the basis that the Resident vacated the rental unit. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 12% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

**Mitigation of Damages.**   If you move out early, you'll be subject to paragraph 11 (Early Move-Out) and all other remedies. We'll make a reasonable effort to relet and mitigate damages after we learn of your early move out or abandonment. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due. This section shall not apply to any Lease Buy Out by you.

## General Clauses

**34. ENTIRE AGREEMENT.**   Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**35. NO AUTHORITY TO AMEND UNLESS IN WRITING.**
Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No verbal agreements, advertisements, warranties or representations have been made or relied upon by either party or any agent or employee of either party, and neither party.

**36. NO WAIVER.**   No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights, or our acceptance of rent after a notice of non-compliance or non-payment isn't a waiver under any circumstances.

**37. NOTICE.**   Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed. All notices and documents may be in English and, at our option, in any language that you read or speak.

**38. MISCELLANEOUS.**
A. Exercising one remedy won't constitute an election or waiver of other remedies.
B. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.
C. All remedies are cumulative.
D. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
E. This Lease Contract binds subsequent owners.
F. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
G. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.
H. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option.
I. All lease obligations must be performed in the county where the apartment is located.
J. Resident has completed an application in connection with executing this Lease. Owner has relied upon the statements set forth in said application in deciding to rent the Premises to Resident. It is agreed that should Owner subsequently discover any misstatements of fact in the Resident's application, such misstatements shall be deemed a material and incurable breach of this Lease and shall entitle Owner to serve Resident with a notice terminating the tenancy.
K. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**39. OBLIGATION TO VACATE.**   If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with the Lease Terms paragraph, and we accept such written notice, then you are required to vacate the Apartment and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

**40. CONTACTING YOU.**   By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**41. FORCE MAJEURE.**   If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**42. PAYMENTS.**   Payment of all sums is an independent covenant. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

**43. ASSOCIATION MEMBERSHIP.**   We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## When Moving Out

**44. MOVE-OUT NOTICE.**   Unless this lease terminates automatically by operation of law with no notice and no right of holdover (see paragraph 3 Lease Term), you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire lease term if you move out early (paragraph 23 - Release of Resident) except under any other applicable law. YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

• We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3 (Lease Term). Oral move-out notice will not be accepted and will not terminate your Lease Contract.
• Your move-out notice must not terminate the Lease Contract sooner than the end of the lease term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice—unless you are in default.

**45. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under paragraphs 11 (Early Move-Out) and 33 (Default by Resident). You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the 21-day period (or as amended by state law) for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**46. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. Carpets must be professionally cleaned by a third party truck style cleaner. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges. In lieu of liability for cleaning charges, we may charge you a non-refundable cleaning fee which will be described in paragraph 10 (Special Provisions) or an addendum to this Lease Contract and will not be construed as part of any security deposit.

**47. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection, but the move out inspection will not be delayed to accommodate your schedule. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

If a pre-move out inspection is held, the final charges for move out damages will be determined at the inspection after you have vacated the unit. No statements made by us during any pre-move out inspection shall limit those charges.

**48. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable, which may be withheld from your security deposit upon expiration of the Lease Contract (this list is not deemed to exclude charges for damages not specifically listed): unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector or carbon monoxide detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized access control devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under paragraph 13 (Property Left in Apartment); removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal-related charges; government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors and carbon monoxide detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for owner/manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract.

You acknowledge and agree that any cleaning or damages due to smoke damage from any source, including but not limited to cigarettes, cigars, pipes, candles or incense, shall not be considered to be normal wear and tear and that you will be charged for all such cleaning, repair or replacement costs.

You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 (Keys) if you fail to return them on or before your actual move-out date; (2) accelerated rent if you have violated paragraph 33 (Default by Resident); and (3) a reletting fee if you have violated paragraph 11 (Early Move-Out).

**49. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT. Deposit Return and Forwarding Address.** You are required to provide us written notice of your forwarding address, on or before termination of this Lease Contract. We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 21 days or as amended by Washington state law after the lease is terminated, and you surrender the apartment, or 21 days or as amended by Washington state law after we learn of your abandonment. We reserve the right to amend the charges listed due to later-discovered damages, or if only an estimate was available during the 21 day or as amended by Washington state law period and the actual amount differs from the estimated charges.

**Surrender.** You have surrendered the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 (Keys) have been turned in where rent is paid—whichever date occurs first.

**Abandonment.** You have abandoned the apartment when all of the following have occurred: (1) you are in default for nonpayment of rent, and (2) you have either told us you do not intend to continue tenancy or evidence indicates this intention. Evidence of this intention includes without limitation your removal of some or all of your clothes, furniture, or personal belongings or the disconnection of utilities to your unit that are not in our name.

Surrender, abandonment, or judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13 - Property Left in Apartment), but do not affect our mitigation obligations (paragraph 33 - Default by Resident).

## Severability, Originals and Attachments, and Signatures

**50. SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**51. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

**Name, address and phone number of owner or owner's representative for notice and process purposes (include name of county in State of Washington)**

Sunset Electric
1111 E. Pine Street

Seattle, WA 98122

**Your security deposit will be deposited in:**

Escrow Company or Bank Name: Wells Fargo

Address:
1201 Pacific Ave. Ste. 175
Tacoma, WA 98402

Your canceled check will be your deposit receipt.

> **You are legally bound by this document.**
> **Read it carefully before signing.**

**Resident or Residents** *(all sign below)*

_____

_____

_____

_____

_____

_____

**Owner or Owner's Representative** *(signing on behalf of owner)*

_____

**Name and address of locator service** *(if applicable)*

_____

_____

_____

**Date form is filled out** *(same as on top of page 1)*

08/05/2021

_____

State of Washington

County of _____

I certify that I know or have satisfactory evidence that _____

is/are the person(s) who appeared before me and acknowledged that he/she/they signed this instrument, and acknowledged it to be his/her/their free and voluntary act for the uses and purposes mentioned in the instrument.

_____     _____
Dated                                                      My Commission Expires

_____
Printed Name of Notary Public

_____
Signature of Notary Public

*Note: Signatures of all parties must be notarized if lease is for more than one year.*

```
┌──────────────────────────────────────┐
│                                        │
│                                        │
│                                        │
│                                        │
│                                        │
│                                        │
└──────────────────────────────────────┘
```

*(Use above space for notary stamp/seal)*

SPECIAL PROVISIONS (CONTINUED FROM PAGE 2). _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

DocuSigned by:
XAVIER WASHINGTON
B43ABD648AF44F7...

DocuSigned by:
Brynna Rodiwald
3CF07D20AB06462...

© 2021, National Apartment Association, Inc.    Washington/National Apartment Association Official Form, June 2021        Page 9 of 9

**EXHIBIT B**

**Resident Ledger**



**Date: 09/28/2023**

| Code | REDACTED | Property | pn10649 | Lease From | 10/07/2021 |
|---|---|---|---|---|---|
| Name | Xavier Washington | Unit | 603 | Lease To | 10/06/2022 |
| Address | 1111 East Pine St., Apt. 603 | Status | Current | Move In | 08/07/2019 |
| | | Rent | 2215.00 | Move Out | |
| City | Seattle, WA 98122 | Phone (H) | | Phone (W) | REDACTED |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|---|
| 08/07/2019 | sdep | Security Deposit on Hand at Conversion | 300.00 | | 300.00 | 21732026 |
| 08/07/2019 | | | | 300.00 | 0.00 | 7308533 |
| 03/01/2022 | rele | ELEC/RESIDENT - Balance Due at Conversion | 231.68 | | 231.68 | 21731733 |
| 03/01/2022 | rgas | GAS/RESIDENT - Balance Due at Conversion | 0.48 | | 232.16 | 21731759 |
| 03/01/2022 | rtra | TRASH - Balance Due at Conversion | 7.07 | | 239.23 | 21731832 |
| 03/01/2022 | utsf | UTILITYADMIN - Balance Due at Conversion | 3.95 | | 243.18 | 21731861 |
| 03/01/2022 | rwat | WATER/RESIDENT - Balance Due at Conversion | 107.75 | | 350.93 | 21731888 |
| 04/01/2022 | rent | Rent (04/2022) | 2,215.00 | | 2,565.93 | 21732156 |
| 04/01/2022 | prkg | Parking (04/2022) | 275.00 | | 2,840.93 | 21732217 |
| 04/01/2022 | rgas | Gas Charges 02/01/22 - 02/28/22 | 0.42 | | 2,841.35 | 21732694 |
| 04/01/2022 | utsf | Utility Service Fee 02/01/22 - 02/28/22 | 3.95 | | 2,845.30 | 21732788 |
| 04/01/2022 | rtra | Trash Charges 02/01/22 - 02/28/22 | 7.07 | | 2,852.37 | 21732872 |
| 04/01/2022 | rwat | Water Charges 02/01/22 - 02/28/22 | 19.75 | | 2,872.12 | 21732951 |
| 04/01/2022 | rsew | Sewer Charges 02/01/22 - 02/28/22 | 85.99 | | 2,958.11 | 21733031 |
| 04/29/2022 | | chk# 135655653 Debit Card On-Line Payment ; Web - Resident Services | | 2,215.00 | 743.11 | 7432570 |
| 05/01/2022 | utsf | Other Reimbursed Costs - 02/28/22-03/24/22 | 3.95 | | 747.06 | 22026704 |
| 05/01/2022 | rgas | Reimbursed Gas - 02/28/22-03/24/22 | 0.43 | | 747.49 | 22026705 |
| 05/01/2022 | rsew | Reimbursed Sewer - 02/28/22-03/24/22 | 54.27 | | 801.76 | 22026706 |
| 05/01/2022 | rtra | Reimbursed Trash - 02/28/22-03/24/22 | 7.07 | | 808.83 | 22026707 |
| 05/01/2022 | rwat | Reimbursed Water - 02/28/22-03/24/22 | 51.46 | | 860.29 | 22026708 |
| 05/01/2022 | rent | Rent (05/2022) | 2,215.00 | | 3,075.29 | 22281300 |
| 05/01/2022 | prkg | Parking (05/2022) | 275.00 | | 3,350.29 | 22281301 |
| 05/20/2022 | | chk# 138876072 Debit Card On-Line Payment ; Web - Resident Services | | 1,200.00 | 2,150.29 | 7551471 |
| 05/27/2022 | | chk# 139339970 Debit Card On-Line Payment ; Web - Resident Services | | 1,015.00 | 1,135.29 | 7588791 |
| 06/01/2022 | utsf | Other Reimbursed Costs - 03/24/22-04/18/22 | 3.95 | | 1,139.24 | 22463526 |
| 06/01/2022 | rgas | Reimbursed Gas - 03/24/22-04/18/22 | 0.43 | | 1,139.67 | 22463527 |
| 06/01/2022 | rsew | Reimbursed Sewer - 03/24/22-04/18/22 | 36.68 | | 1,176.35 | 22463529 |
| 06/01/2022 | rtra | Reimbursed Trash - 03/24/22-04/18/22 | 7.07 | | 1,183.42 | 22463531 |
| 06/01/2022 | rwat | Reimbursed Water - 03/24/22-04/18/22 | 45.56 | | 1,228.98 | 22463533 |
| 06/01/2022 | rent | Rent (06/2022) | 2,215.00 | | 3,443.98 | 22798413 |
| 06/01/2022 | prkg | Parking (06/2022) | 275.00 | | 3,718.98 | 22798414 |
| 06/28/2022 | | chk# 143312595 Debit Card On-Line Payment ; Web - Resident Services | | 2,597.18 | 1,121.80 | 7756310 |
| 07/01/2022 | utsf | Other Reimbursed Costs - 04/18/22-05/15/22 | 3.95 | | 1,125.75 | 22953055 |
| 07/01/2022 | rgas | Reimbursed Gas - 04/18/22-05/15/22 | 0.42 | | 1,126.17 | 22953059 |
| 07/01/2022 | rsew | Reimbursed Sewer - 04/18/22-05/15/22 | 31.19 | | 1,157.36 | 22953066 |
| 07/01/2022 | rtra | Reimbursed Trash - 04/18/22-05/15/22 | 7.07 | | 1,164.43 | 22953070 |
| 07/01/2022 | rwat | Reimbursed Water - 04/18/22-05/15/22 | 43.71 | | 1,208.14 | 22953075 |
| 07/01/2022 | rent | Rent (07/2022) | 2,215.00 | | 3,423.14 | 23322002 |
| 07/01/2022 | garr | Garage Rental (07/2022) | 275.00 | | 3,698.14 | 23322003 |
| 08/01/2022 | utsf | Other Reimbursed Costs - 05/15/22-06/15/22 | 3.95 | | 3,702.09 | 23548975 |
| 08/01/2022 | rgas | Reimbursed Gas - 05/15/22-06/15/22 | 0.53 | | 3,702.62 | 23548977 |
| 08/01/2022 | trsew | Reimbursed Sewer - 05/15/22-06/15/22 | 52.42 | | 3,755.04 | 23548980 |
| 08/01/2022 | rtra | Reimbursed Trash - 05/15/22-06/15/22 | 10.01 | | 3,765.05 | 23548981 |
| 08/01/2022 | rwat | Reimbursed Water - 05/15/22-06/15/22 | 50.84 | | 3,815.89 | 23548985 |
| 08/01/2022 | trsew | Reimbursed Sewer - 05/15/22-06/15/22 | (52.42) | | 3,763.47 | 23703954 |

| Date | Code | Description | Amount | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 08/01/2022 | rsew | Reimbursed Sewer - 05/15/22-06/15/22 | 52.42 | | 3,815.89 | 23724208 |
| 08/01/2022 | rent | Rent (08/2022) | 2,215.00 | | 6,030.89 | 23858049 |
| 08/01/2022 | garr | Garage Rental (08/2022) | 275.00 | | 6,305.89 | 23858050 |
| 08/19/2022 | | chk# 150774932 Debit Card On-Line Payment ; Web - Resident Services | | 2,215.00 | 4,090.89 | 8063528 |
| 09/01/2022 | utsf | Other Reimbursed Costs - 06/15/22-07/15/22 | 3.95 | | 4,094.84 | 24073243 |
| 09/01/2022 | rgas | Reimbursed Gas - 06/15/22-07/15/22 | 0.47 | | 4,095.31 | 24073245 |
| 09/01/2022 | rsew | Reimbursed Sewer - 06/15/22-07/15/22 | 16.74 | | 4,112.05 | 24073247 |
| 09/01/2022 | rtra | Reimbursed Trash - 06/15/22-07/15/22 | 9.84 | | 4,121.89 | 24073249 |
| 09/01/2022 | rwat | Reimbursed Water - 06/15/22-07/15/22 | 40.17 | | 4,162.06 | 24073251 |
| 09/01/2022 | rent | Rent (09/2022) | 2,215.00 | | 6,377.06 | 24338572 |
| 09/01/2022 | garr | Garage Rental (09/2022) | 275.00 | | 6,652.06 | 24338573 |
| 09/17/2022 | | chk# 154685577 Debit Card On-Line Payment ; Web - Resident Services | | 2,215.00 | 4,437.06 | 8209123 |
| 10/01/2022 | utsf | Other Reimbursed Costs - 07/15/22-08/15/22 | 3.95 | | 4,441.01 | 24527351 |
| 10/01/2022 | utsf | Other Reimbursed Costs - 04/12/22-06/09/22 | 25.00 | | 4,466.01 | 24527356 |
| 10/01/2022 | rgas | Reimbursed Gas - 07/15/22-08/15/22 | 0.48 | | 4,466.49 | 24527358 |
| 10/01/2022 | rsew | Reimbursed Sewer - 07/15/22-08/15/22 | 14.62 | | 4,481.11 | 24527361 |
| 10/01/2022 | rtra | Reimbursed Trash - 07/15/22-08/15/22 | 9.90 | | 4,491.01 | 24527364 |
| 10/01/2022 | rwat | Reimbursed Water - 07/15/22-08/15/22 | 39.30 | | 4,530.31 | 24527367 |
| 10/01/2022 | rele | Vacant Electric - 04/12/22-06/09/22 | 76.21 | | 4,606.52 | 24527370 |
| 10/01/2022 | rent | Rent (10/2022) | 2,215.00 | | 6,821.52 | 24841490 |
| 10/01/2022 | garr | Garage Rental (10/2022) | 275.00 | | 7,096.52 | 24841928 |
| 11/01/2022 | utsf | Other Reimbursed Costs - 08/15/22-09/15/22 | 3.95 | | 7,100.47 | 25095074 |
| 11/01/2022 | rgas | Reimbursed Gas - 08/15/22-09/15/22 | 0.42 | | 7,100.89 | 25095077 |
| 11/01/2022 | rsew | Reimbursed Sewer - 08/15/22-09/15/22 | 56.91 | | 7,157.80 | 25095080 |
| 11/01/2022 | rtra | Reimbursed Trash - 08/15/22-09/15/22 | 9.77 | | 7,167.57 | 25095083 |
| 11/01/2022 | rwat | Reimbursed Water - 08/15/22-09/15/22 | 57.45 | | 7,225.02 | 25095086 |
| 11/01/2022 | rent | Rent (11/2022) | 2,215.00 | | 9,440.02 | 25319207 |
| 11/01/2022 | garr | Garage Rental (11/2022) | 275.00 | | 9,715.02 | 25319208 |
| 12/01/2022 | utsf | Other Reimbursed Costs - 09/15/22-10/15/22 | 3.95 | | 9,718.97 | 25602911 |
| 12/01/2022 | rgas | Reimbursed Gas - 09/15/22-10/15/22 | 0.42 | | 9,719.39 | 25602916 |
| 12/01/2022 | rsew | Reimbursed Sewer - 09/15/22-10/15/22 | 80.50 | | 9,799.89 | 25602920 |
| 12/01/2022 | rtra | Reimbursed Trash - 09/15/22-10/15/22 | 10.28 | | 9,810.17 | 25602924 |
| 12/01/2022 | rwat | Reimbursed Water - 09/15/22-10/15/22 | 67.48 | | 9,877.65 | 25602929 |
| 12/01/2022 | rent | Rent (12/2022) | 2,215.00 | | 12,092.65 | 25838391 |
| 12/01/2022 | garr | Garage Rental (12/2022) | 275.00 | | 12,367.65 | 25838392 |
| 01/01/2023 | utsf | Other Reimbursed Costs - 10/15/22-11/15/22 | 3.95 | | 12,371.60 | 26100341 |
| 01/01/2023 | rgas | Reimbursed Gas - 10/15/22-11/15/22 | 0.36 | | 12,371.96 | 26100343 |
| 01/01/2023 | rsew | Reimbursed Sewer - 10/15/22-11/15/22 | 77.10 | | 12,449.06 | 26100347 |
| 01/01/2023 | rtra | Reimbursed Trash - 10/15/22-11/15/22 | 10.12 | | 12,459.18 | 26100352 |
| 01/01/2023 | rwat | Reimbursed Water - 10/15/22-11/15/22 | 60.23 | | 12,519.41 | 26100355 |
| 01/01/2023 | garr | Garage Rental (01/2023) | 275.00 | | 12,794.41 | 26326469 |
| 01/01/2023 | rent | Rent (01/2023) | 2,215.00 | | 15,009.41 | 26336439 |
| 02/01/2023 | utsf | Other Reimbursed Costs - 11/15/22-12/15/22 | 3.95 | | 15,013.36 | 26526536 |
| 02/01/2023 | rgas | Reimbursed Gas - 11/15/22-12/15/22 | 0.38 | | 15,013.74 | 26526537 |
| 02/01/2023 | rsew | Reimbursed Sewer - 11/15/22-12/15/22 | 53.98 | | 15,067.72 | 26526538 |
| 02/01/2023 | rtra | Reimbursed Trash - 11/15/22-12/15/22 | 14.12 | | 15,081.84 | 26526539 |
| 02/01/2023 | rwat | Reimbursed Water - 11/15/22-12/15/22 | 52.14 | | 15,133.98 | 26526540 |
| 02/01/2023 | rent | Rent (02/2023) | 2,215.00 | | 17,348.98 | 26795542 |
| 02/01/2023 | garr | Garage Rental (02/2023) | 275.00 | | 17,623.98 | 26795836 |
| 03/01/2023 | utsf | Other Reimbursed Costs - 12/15/22-01/15/23 | 3.95 | | 17,627.93 | 27091155 |
| 03/01/2023 | rgas | Reimbursed Gas - 12/15/22-01/15/23 | 0.37 | | 17,628.30 | 27091159 |
| 03/01/2023 | rsew | Reimbursed Sewer - 12/15/22-01/15/23 | 52.40 | | 17,680.70 | 27091165 |
| 03/01/2023 | rtra | Reimbursed Trash - 12/15/22-01/15/23 | 13.63 | | 17,694.33 | 27091169 |
| 03/01/2023 | rwat | Reimbursed Water - 12/15/22-01/15/23 | 51.59 | | 17,745.92 | 27091172 |
| 03/01/2023 | rent | Rent (03/2023) | 2,215.00 | | 19,960.92 | 27326285 |
| 03/01/2023 | garr | Garage Rental (03/2023) | 275.00 | | 20,235.92 | 27326549 |
| 04/01/2023 | utsf | Other Reimbursed Costs - 01/15/23-02/15/23 | 3.95 | | 20,239.87 | 27562222 |
| 04/01/2023 | rgas | Reimbursed Gas - 01/15/23-02/15/23 | 0.42 | | 20,240.29 | 27562223 |
| 04/01/2023 | rsew | Reimbursed Sewer - 01/15/23-02/15/23 | 45.00 | | 20,285.29 | 27562225 |
| 04/01/2023 | rtra | Reimbursed Trash - 01/15/23-02/15/23 | 17.21 | | 20,302.50 | 27562227 |
| 04/01/2023 | rwat | Reimbursed Water - 01/15/23-02/15/23 | 48.70 | | 20,351.20 | 27562228 |
| 04/01/2023 | garr | Garage Rental (04/2023) | 275.00 | | 20,626.20 | 27849434 |

| Date | Code | Description | Amount | | Balance | Reference |
|------|------|-------------|--------|--|---------|-----------|
| 04/01/2023 | rent | Rent (04/2023) | 2,215.00 | | 22,841.20 | 27857343 |
| 04/05/2023 | | chk# 181331762 Debit Card On-Line Payment ; Web - Resident Services | | 600.00 | 20,626.20 | 9290645 |
| 05/01/2023 | utsf | Other Reimbursed Costs - 02/15/23-03/15/23 | 3.95 | | 20,630.15 | 28122354 |
| 05/01/2023 | rgas | Reimbursed Gas - 02/15/23-03/15/23 | 0.42 | | 20,630.57 | 28122356 |
| 05/01/2023 | rsew | Reimbursed Sewer - 02/15/23-03/15/23 | 54.67 | | 20,685.24 | 28122357 |
| 05/01/2023 | rtra | Reimbursed Trash - 02/15/23-03/15/23 | 17.03 | | 20,702.27 | 28122360 |
| 05/01/2023 | rwat | Reimbursed Water - 02/15/23-03/15/23 | 52.02 | | 20,754.29 | 28122362 |
| 05/01/2023 | rent | Rent (05/2023) | 2,215.00 | | 22,969.29 | 28363696 |
| 05/01/2023 | garr | Garage Rental (05/2023) | 275.00 | | 23,244.29 | 28363830 |
| 06/01/2023 | utsf | Other Reimbursed Costs - 03/15/23-04/15/23 | 3.95 | | 23,248.24 | 28666016 |
| 06/01/2023 | rgas | Reimbursed Gas - 03/15/23-04/15/23 | 0.43 | | 23,248.67 | 28666020 |
| 06/01/2023 | rsew | Reimbursed Sewer - 03/15/23-04/15/23 | 53.54 | | 23,302.21 | 28666023 |
| 06/01/2023 | rtra | Reimbursed Trash - 03/15/23-04/15/23 | 10.16 | | 23,312.37 | 28666025 |
| 06/01/2023 | rwat | Reimbursed Water - 03/15/23-04/15/23 | 51.50 | | 23,363.87 | 28666028 |
| 06/01/2023 | rent | Rent (06/2023) | 2,215.00 | | 25,578.87 | 28894298 |
| 06/01/2023 | garr | Garage Rental (06/2023) | 275.00 | | 25,853.87 | 28894396 |
| 06/15/2023 | | chk# 191033777 Debit Card On-Line Payment ; Web - Resident Services | | 1,100.00 | 24,753.87 | 9661836 |
| 07/01/2023 | utsf | Other Reimbursed Costs - 04/15/23-05/15/23 | 3.95 | | 24,757.82 | 29203452 |
| 07/01/2023 | rgas | Reimbursed Gas - 04/15/23-05/15/23 | 0.52 | | 24,758.34 | 29203471 |
| 07/01/2023 | rsew | Reimbursed Sewer - 04/15/23-05/15/23 | 96.27 | | 24,854.61 | 29203483 |
| 07/01/2023 | rtra | Reimbursed Trash - 04/15/23-05/15/23 | 10.69 | | 24,865.30 | 29203486 |
| 07/01/2023 | rwat | Reimbursed Water - 04/15/23-05/15/23 | 21.48 | | 24,886.78 | 29203489 |
| 07/01/2023 | rent | Rent (07/2023) | 2,215.00 | | 27,101.78 | 29454663 |
| 07/01/2023 | garr | Garage Rental (07/2023) | 275.00 | | 27,376.78 | 29454664 |
| 08/01/2023 | utsf | Other Reimbursed Costs - 05/15/23-06/15/23 | 3.95 | | 27,380.73 | 29764226 |
| 08/01/2023 | rgas | Reimbursed Gas - 05/15/23-06/15/23 | 0.60 | | 27,381.33 | 29764230 |
| 08/01/2023 | rsew | Reimbursed Sewer - 05/15/23-06/15/23 | 70.70 | | 27,452.03 | 29764233 |
| 08/01/2023 | rtra | Reimbursed Trash - 05/15/23-06/15/23 | 15.07 | | 27,467.10 | 29764237 |
| 08/01/2023 | rwat | Reimbursed Water - 05/15/23-06/15/23 | 13.10 | | 27,480.20 | 29764240 |
| 08/01/2023 | garr | Garage Rental (08/2023) | 275.00 | | 27,755.20 | 30026813 |
| 08/01/2023 | rent | Rent (08/2023) | 2,215.00 | | 29,970.20 | 30026814 |
| 09/01/2023 | utsf | Other Reimbursed Costs - 06/15/23-07/15/23 | 3.95 | | 29,974.15 | 30332542 |
| 09/01/2023 | rgas | Reimbursed Gas - 06/15/23-07/15/23 | 0.64 | | 29,974.79 | 30332544 |
| 09/01/2023 | rsew | Reimbursed Sewer - 06/15/23-07/15/23 | 83.62 | | 30,058.41 | 30332546 |
| 09/01/2023 | rtra | Reimbursed Trash - 06/15/23-07/15/23 | 15.26 | | 30,073.67 | 30332548 |
| 09/01/2023 | rwat | Reimbursed Water - 06/15/23-07/15/23 | 17.61 | | 30,091.28 | 30332549 |
| 09/01/2023 | rent | Rent (09/2023) | 2,215.00 | | 32,306.28 | 30630116 |
| 09/01/2023 | garr | Garage Rental (09/2023) | 275.00 | | 32,581.28 | 30630117 |
| 10/01/2023 | utsf | Other Reimbursed Costs - 07/15/23-08/15/23 | 3.95 | | 32,585.23 | 30871148 |
| 10/01/2023 | rgas | Reimbursed Gas - 07/15/23-08/15/23 | 0.50 | | 32,585.73 | 30871149 |
| 10/01/2023 | rsew | Reimbursed Sewer - 07/15/23-08/15/23 | 77.24 | | 32,662.97 | 30871150 |
| 10/01/2023 | rtra | Reimbursed Trash - 07/15/23-08/15/23 | 10.79 | | 32,673.76 | 30871151 |
| 10/01/2023 | rwat | Reimbursed Water - 07/15/23-08/15/23 | 17.90 | | 32,691.66 | 30871152 |